UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                    **FOR PUBLICATION**

------------------------------------------------------------- x

*In re*:                                              :

**FERNANDO MATAMOROS**                  :              Chapter 13
**and MARISOL VARGAS,**

                                                      :              Case No. 18-11713 (CGM)

                                      *Debtors.*       :

------------------------------------------------------------- x

**CITY OF NEW YORK, The City of New**
**York by and through NYC Department of**
**Administrative Services and New York Police**
**Department**

                                      *Plaintiff,*             Adv. No. 18-01639 (CGM)

                        v.

**FERNANDO MATAMOROS and**
**MARISOL VARGAS and KRISTA M.**
**PREUSS, solely and in her capacity as**
**Chapter 13 Trustee of the Debtors' estates,**

                                      *Defendants.*

------------------------------------------------------------- x


**MEMORANDUM DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING IN PART AND GRANTING IN PART DEBTORS'
MOTION FOR SUMMARY JUDGMENT**


**A P P E A R A N C E S**:

Law Office of David Brodman
633 Lydig Avenue
Bronx, NY 10462
*Counsel for Debtors/Defendants*
*Fernando Matamoros and Marisol Vargas*
By:    David Brodman

N.Y.C. Law Department
100 Church Street, 5th Floor
New York, NY 10007
*Counsel for Plaintiff City of New York*
By:    Gabriela P. Cacuci

## CECELIA G. MORRIS
## CHIEF UNITED STATES BANKRUPTCY JUDGE

At the time Fernando Matamoros ("Debtor") and his wife, Marisol Vargas, (together "Debtors") filed their bankruptcy petition, the City of New York, by and through NYC Department of Administrative Services and New York Police Department ("Plaintiff" or "City") was deducting $220.03 from each of the Debtor's bi-weekly paychecks pursuant to an agreement in which Debtor received advances[1] on his salary. Several deductions also occurred post-petition. Plaintiff asserts these advances are not part of the Debtors' bankruptcy estate and are not dischargeable because they are entitled to recoupment. The Debtors assert these advances are not eligible for recoupment, do not fall under any exceptions to discharge, and that the post-petition deductions were a willful violation of the automatic stay. This Court finds the Plaintiff has no right to recoupment, the debt is dischargeable, the Plaintiff willfully violated the automatic stay, the Debtors are entitled to actual damages and attorney's fees, and the Debtors are not entitled to punitive damages.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

---

[1] The parties dispute whether the monies paid by the City were an advance or an overpayment yet, both parties have used the terms interchangeably in their pleadings. New York State Labor Law permits wage deductions to recover an overpayment only "where such overpayment is due to a mathematical or other clerical error by the employer" and also allows wage deductions for the "repayment of advances of salary or wages made by the employer to the employee." N.Y. Lab. Law § 193 (Consol. 2019). The monies paid by the City were an advance. They were intentional and designed to aid the Debtor while he served in ordered military duty in covered operations in accordance with New York State Military Law § 242 and the 2001 Mayoral Order that established the Extended Military Benefits Program-Full Pay/Repayment Plan.

January 31, 2012.  Venue is proper pursuant to 28 U.S.C. § 1409.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (C), (E), (I), and (J).

## BACKGROUND FACTS

The following facts are undisputed.  New York State Military Law § 242 and the 2001 Mayoral Order established the Extended Military Benefits Program-Full Pay/Repayment Plan ("EMBP-FP/RP") to compensate City employees called into military duty in certain "covered operations" following the terrorist attacks on September 11, 2001.  The Military Law gives the City of New York authority to determine how the program is implemented. N.Y. Mil. § 242(b), (e).  The New York City Department of Citywide Administrative Services ("DCAS") provides the terms of the program for the City.  Pl.'s Statement of Undisputed Facts Ex. B, ECF No. 25-1.  Qualified employees can receive both their City salary and their military salary while on ordered military duty in a covered operation.  The Debtor participated in the EMBP-FP/RP as an employee of the New York City Police Department ("NYPD") engaged in a covered operation with the U.S. Army.

The EMBP-FP/RP requires an employee, upon return from ordered military duty, to repay the lesser of the wage advance or the difference between his or her salary paid by the City and his or her salary paid by the U.S. military while participating in covered operations, less "[a] 7.65% adjustment for Social Security and Medicare and a 15% administrative adjustment" and credit for Leave Balances.[2]  Pl.'s Statement of Undisputed Facts Ex. B, at 9, ECF No. 25-1.

Before the Debtor entered active service for a covered operation, the Debtor signed a "Military Pay Reimbursement Agreement for Ordered Military Duty for Operation Enduring

---

[2] "'Leave Balances' shall mean annual leave (including equivalent terms for annual leave as used by the uniformed agencies), compensatory time, vested annual leave or compensatory time balances."  Pl.'s Statement of Undisputed Facts Ex. B, at 5, ECF No. 25-1.

Freedom or Other Ordered Military Duty in Connection With the Events of September 11, 2001 Pursuant to Personnel Order No.2001/4, dated October 15, 2001" ("Reimbursement Agreement"). The Reimbursement Agreement provided that the City would pay him his City salary on the condition that he repay the City, after returning from ordered military duty, an undetermined portion of the monies based upon the aforementioned formula and also authorized the City to "deduct the amount from [his] salary over a period of time." Pl.'s Statement of Undisputed Facts Ex. C, at 2, ECF No. 25-2. The Debtor was paid $308,395.98 by the City and $153,581.10 by the military over three covered time periods: March 31, 2005 to March 15, 2006; November 24, 2006 to November 4, 2008; and November 15, 2008 to February 21, 2010.

On April 29, 2010, after returning from his last set of ordered military duty, the Debtor agreed to repay the City $118,802.72 via payroll deductions over ten years and a lump-sum payment for the remaining balance due at the end of the ten years. Pl.'s Statement of Undisputed Facts 7, ECF No. 25. On October 15, 2010, this amount was reduced to $93,642.76 after a credit for accrued vacation days was applied. *Id.* The City deducted $220.03 from each bi-weekly paycheck between February 2010 and September 2018.

On June 3, 2018, the Debtor and his wife filed for bankruptcy relief under chapter 13 and scheduled the City as a creditor for $50,947.00. The City continued payroll deductions, post-petition, from June 3, 2018 to September 7, 2018. The City filed a timely proof of claim in the amount of $49,856.79.[3]

## Procedural History

On September 25, 2018, the Plaintiff filed this adversary proceeding against the Debtors alleging that the advanced wages are not property of the Debtors' estate and cannot be paid to other

---

[3] This amount is according to the proof of claim filed by the City. Proof of Claim No. 12, *In re Matamoros*, No. 18-11713-cgm (Bankr. S.D.N.Y. June 3, 2018).

creditors, the repayment agreement is an executory contract, the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(7), and (a)(19), and the debt is a priority claim. The Plaintiff also seeks relief from the stay to continue payroll deductions. Compl. 7, ECF No. 1. The Debtors answered and counterclaimed on October 27, 2018 seeking actual and punitive damages and attorney's fees for the Plaintiff's violation of the automatic stay and for defending the adversary proceeding pursuant to 11 U.S.C. § 523(d). Def.'s Countercl. 4–5, ECF No. 4. The Plaintiff answered the counterclaim on November 7, 2018. On May 1, 2019, the parties submitted competing motions for summary judgment. This Court heard oral argument on the motions on July 11, 2019.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A] party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Whether the Debtors' Motion for Summary Judgment should be denied due to Debtors' defective Statement of Undisputed Facts?**

On May 1, 2019, the Debtors filed a Motion for Summary Judgment and a document entitled, per the docket, "Statement of Undisputed Facts," which stated that the parties could not agree to a Joint Statement of Material Facts and attached a list of exhibits.  The Plaintiff argues this is not a Statement of Undisputed Facts and the motion should be denied pursuant to Local Bankruptcy Rule 7056-1(b) which states that

> [u]pon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit the statement shall constitute grounds for denial of the motion.

A "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). "Particularly, a court has the authority to overlook a party's failure to file a statement of material facts." *MCI Worldcom Commc'n, Inc. v. Commc'n. Network Int'l, Ltd. (In re Worldcom, Inc.)*, No. 02-13533 (AJG), 2007 Bankr. LEXIS 4082, at *24 (Bankr. S.D.N.Y. July 9, 2007) (citing *Holtz*, 258 F.3d at 73.).  While the document filed by the Debtors is not a Statement of Facts under the Rule, the "Preliminary Statement" in Debtors' "Memorandum of Law" filed on May 2, 2019 is much closer.  ECF No. 30.  The Court will overlook that the Debtors' document does not adhere strictly to the requirements of Local Bankruptcy Rule 7056-1(b).

**Whether an express trust was established?**

New York law requires the presence of the following elements to create an express trust: "[1] a designated beneficiary; [2] a designated trustee who is not the same person as the beneficiary; [3] a clearly identifiable *res*; and [4] delivery of the *res* by the settlor to the trustee

with the intent of vesting legal title in the trustee." *Caballero v. Anselmo*, 720 F. Supp. 1088, 1095 (S.D.N.Y. 1989).

Res is "[t]he subject matter of a trust" or "the property for which a trustee is responsible." *Res*, *Black's Law Dictionary* (11th ed. 2019); *Corpus*, *Black's Law Dictionary* (11th ed. 2019). "A trust may be created orally or in writing, and no particular form of words is necessary." *Cabellero*, 720 F. Supp at 1096. "[A] trust may arise by implication 'from the acts or words of the person creating it,' as long as the intent to create such an implied trust arises as a necessary inference from unequivocal evidence." *Id.* (quoting *Wadd v. Hazelton*, 137 N.Y. 215, 219 (1893)). "[T]here must be either an 'explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.'" *Agudas Chasidei Chabad v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987) (citing *Beaver v. Beaver*, 117 N.Y. 421, 428 (1889)).

The Plaintiff argues that the Reimbursement Agreement formed an express trust where the *res* is the City salary paid while the Debtor was on ordered military duty, the City is the beneficiary, and the Debtors are the trustees. The Court disagrees. Nowhere in the Reimbursement Agreement is any party designated a beneficiary or trustee and the Plaintiff has failed to provide any evidence or circumstances that show beyond this Court's reasonable doubt that the parties intended to create a trust.

## Whether a constructive trust was established?

The goals of the Bankruptcy Code can be frustrated "by the imposition of a constructive trust, [and] 'bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so.'" *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217 (2d Cir. 2004) (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)). "A constructive trust creates 'a separate allocation mechanism outside the scope of the bankruptcy

system,' and so can 'wreak . . . havoc with the priority system ordained by the Bankruptcy Code.'"
*Ades & Berg Grp. Inv'rs v. Breeden (In re Ades & Berg Grp. Inv'rs)*, 550 F.3d 240, 244 (2d Cir. 2008) (quoting *In re First Cent. Fin. Corp.*, 377 F.3d at 217). "New York law is clear that a constructive trust is an equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'" *In re First Cent. Fin. Corp*, 377 F.3d at 216.

"New York law requires that a person establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995).

A fiduciary relationship exists where "[o]ne person depends on another—the fiduciary—to serve his interests." *United States v. Chestman*, 947 F.2d 551, 569 (2d Cir. 1991). Even supposing that a "contractual relationship imposed a duty to act in accordance with the terms of the [agreement]," no constructive trust will be found when the relationship is "not marked by the unique degree of trust and confidence typically characteristic of a fiduciary relationship." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 278 (2d Cir. 2013) (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 804 A.2d 180, 194 (Conn. 2002)). The Debtor and the City had a contractual relationship and not a confidential or fiduciary relationship. Compl. Ex. A, at 9–11, ECF No. 1. "[T]he lack of a fiduciary relationship does not defeat the imposition of a constructive trust" when the other elements are satisfied. *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999).

The second element is satisfied as the Reimbursement Agreement is an express contract.

The third element is also satisfied; without the Debtor promising through the contract to repay the City, the City would have paid no monies to the Debtor.

As for the fourth element, deterring unjust enrichment "is the purpose of a constructive trust[,]" and the "most significant" element. *Id.* at 362. This Court is swayed by the decision in *First Central Financial Corporation*. In *First Central Financial Corporation*, a parent company and its subsidiary signed an agreement prescribing how to apportion tax charges and refunds between the two entities. 377 F.3d at 211. When the subsidiary company filed for bankruptcy, the chapter 7 trustee applied for and received a tax refund of $2.5 million. *Id.* The trustee kept the refund instead of apportioning it according to the agreement and claimed that the funds belonged to the subsidiary company's bankruptcy estate. *Id.* The parent company argued the refund was held in trust for the parent company and was not property of the subsidiary's bankruptcy estate. *Id.* The court found that a constructive trust was not warranted under New York law. "[T]he existence of a written agreement precludes a finding of unjust enrichment" and "where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists." *Id.* at 213, 215.

There is no factual dispute that there is a valid written agreement between the City and the Debtor which provides for an adequate remedy at law. Pl.'s Statement of Undisputed Fact Ex. J, at 6, ECF No. 25-4. As in *First Central Financial Corporation*, the City

> has a contractual claim directly against [the debtor]—arising out of the Agreement—which can be pursued in the bankruptcy proceeding. [The Court] concede[s] that [the City], like many other creditors, will not, in all probability, be made whole in the proceedings; but that does not mean its remedy is legally inadequate, simply that it is imperfect.

377 F.3d at 216. Following that same principle, "retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust." *In re Ades & Berg Grp. Inv'rs*, 550 F.3d at 245 (citing *In re First Cent. Fin. Corp.*, 377 F.3d at 218). This Court is

precluded from finding unjust enrichment due to the existence of a written agreement and rejects the Plaintiff's assertions that a constructive trust was formed via the actions of the parties.

Notwithstanding the existence of the written agreement, the EMBP was established "in connection with the Operation Enduring Freedom. . . . to ease, as much as reasonably possible, any financial disruption for City employees and their families which might have been caused by long-term military duty connected with the events of September 11, 2001" and to recognize "the enormous contribution made by those City employees who are serving on ordered military duty . . . ." Compl. Ex. A, at 3, ECF No. 1-1; Pl.'s Statement of Undisputed Fact 3, ECF No. 25; *id.* at Ex. A, at 4, ECF No. 25-1. The New York Court of Appeals explained that "equity and good conscience" are "the fundamental requirement[s] for imposition of a constructive trust." *In re N. Y. Agency of Bank of Commerce & Credit Int'l S.A.*, 90 N.Y.2d 410, 424 (1997). In the absence of fraud, claims of which Plaintiff has abandoned, this Court will not contravene the purposes of the program by making it more difficult for veterans to successfully reorganize their debts in bankruptcy.

### Whether the Salary Advance May Be Equitably Recouped by the Plaintiff?

"Recoupment comes into bankruptcy law through the common law, rather than by statute [as set off does] . . . ." *Malinowski v. N.Y. State DOL (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998). "[T]he recoupment doctrine is a limited one and should be narrowly construed." *N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 97 (2d Cir. 1997).

Recoupment is "a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002) (quoting *Nat'l Cash Register Co. v. Joseph*, 299 N.Y. 200, 203 (1949)). "Recoupment is in the nature of a

defense, the purpose of which is to do justice viewing one transaction as a whole." *Id.* at 146 (quoting *In re Malinowski*, 156 F.3d at 133). "[R]ecoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received." *In re McMahon*, 129 F.3d at 96. In recoupment "when the creditor's claim 'arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation . . . .'" *Schachter v. Tolassi (In re 105 E. Second St. Assocs.)*, 207 B.R. 64, 68 (Bankr. S.D.N.Y. 1997) (quoting *In re B&L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986).

The controlling Second Circuit decisions in *Westinghouse*, *Malinowski*, and *McMahon* have made clear that equitable recoupment is in the nature of a defense and arises only out of cross demands that stem from the same transaction. The Debtor has no post-petition claims or demands against the City and so the City has asserted equitable recoupment as a claim for relief rather than in the nature of a defense. In doing so, the City has misapplied the doctrine.

Plaintiff cites a plethora of case law that is neither controlling on this Court nor persuasive to support its claim for equitable recoupment. This case is distinguishable by the lack of cross demands between the parties.[4] There is no Debtor claim against the City that would enable the use

---

[4] *Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3d Cir. 1995) (finding that a tenant had a valid recoupment claim where the lease provided for a reduction in rent when the tenant cured the landlord's default); *United Structures v. G.R.G. Eng'g*, 9 F.3d 996, 999–1000 (1st Cir. 1993) (finding that the Miller Act entitles a general contractor to assert a recoupment type of defense); *Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 426 (B.A.P. 9th Cir. 1995) (finding that state law created a right to recoupment for workers' compensation overpayments); *Caldwell v. Cont'l Am. Ins. Co. (In re Caldwell)*, 350 B.R. 182, 196 (E.D. Pa. 2006) (finding a right to recoupment where claims for retirement benefits and to recover overpayments arise from separate transactions); *Thompson v. Bd. of Trustees (In re Thompson)*, 182 B.R. 140, 149–51 (E.D. Va. 1995) (finding no right to recoupment due to the disability and retirement plan being a government-entitlement and finding a right to set off); *In re Hiler*, 99 B.R. 238, 243–44 (D.N.J. 1989) (finding the plaintiff has a right to continue recouping Social Security overpayments); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 313–14 (M.D. Tenn 1981) (finding that the defendant had a right to recoup advances to the plaintiff from the royalties where the advances and royalties arose from the same

of equitable recoupment in the nature of a defense.  This case is further distinguished by the fact that Plaintiff's claims arise out of separate transactions.

"Recoupment in bankruptcy may occur only within a single contract or transaction or a single set of transactions."  *In re McMahon*, 129 F.3d at 96.  The *Malinowski* court found that the pre-petition and post-petition claims for unemployment benefits were separate transactions and not recoupable.  156 F.3d at 132.  "[T]he two claims for unemployment benefits were based upon different episodes of unemployment. . . . The worker was the same, the agency was the same, the law was the same, but the claims arose from different sets of facts, each complete in itself."  *Id.* at 134 (citations omitted).  "[N]ot all cases in which claim and counterclaim arise from the same contract are appropriate for recoupment.  Where the contract itself contemplates the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment."  *Id.* at 135.

The circumstances here are similar to *Malinowski*: while the employee is the same, the agency is the same, and the law is the same, there are different facts giving rise to the Debtor's eligibility for City pay.  Rules laid out by the DCAS control the EMBP.  Pl.'s Statement of Undisputed Facts Ex. B, at 4, ECF No. 25-1; N.Y. Mil. § 242(b), (e).  The rules, called "Terms of the EMBP," state that an employee must be evaluated for eligibility into the program by the

---

transaction); *In re Mayco Plastics v. TRW Vehicle Safety Sys., Inc. (In re Mayco Plastics, Inc.)*, 389 B.R. 7, 25–26 (Bankr. E.D. Mich. 2008) (finding defendant does not have a right to recoupment where the loan was not part of the same transaction as the pre-petition purchase orders); *Tavenner v.  United States (In re Vance)*, 298 B.R. 262, 268–69 (Bankr. E.D. Va. 2003) (finding a right to recoupment where debtor received housing credit from the Marine Corps when he was not entitled to it); *Tidewater Mem'l Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.)*, 106 B.R. 876, 887 (Bankr. E.D. Va. 1989) (denying the defendant's recoupment counterclaim where it did not factually demonstrate its right to recoupment); *In re Clowards, Inc.*, 42 B.R. 627, 628 (Bankr. D. Idaho 1984) (allowing the defendants to assert claims in recoupment not subject to § 553); *In re Maine*, 32 B.R. 452, 455 (Bankr. W.D.N.Y. 1983) (finding that state law provides a right to recoupment for unemployment insurance claims).

employer agency and an employee is eligible "if he or she has been called up for Ordered Military Duty in connection with a Covered Operation." Pl.'s Statement of Undisputed Facts Ex. B, at 10, ECF No. 25-1. Participation in the program is "deemed to have expired at the conclusion of a Period of Coverage." *Id.* The Terms of the EMBP define a Period of Coverage as "the period during which an employee who is called up for Ordered Military Duty for a Covered Operation receives his or her [payment] under the terms of the [EMBP]." *Id.* at 4. Each subsequent time the employee is called up for military duty "a new Enrollment must be executed by the employee," including "submit[ting] the new military orders." *Id.* at 10. In this case, there is no single contract, single transaction, or single set of transactions.

The Debtor was on ordered military duty at different intervals between March 1, 2005 and February 21, 2010 during which the NYPD deemed him eligible to continue to receive his City salary for three separate Periods of Coverage: March 31, 2005 to March 15, 2006; November 24, 2006 to November 4, 2008; and November 15, 2008 to February 21, 2010. Pl.'s Statement of Undisputed Facts 6, ECF No. 25. The Debtor returned from his last set of military orders on February 2, 2010. Pl.'s Statement of Undisputed Facts Ex. G, at 2, ECF No. 25-3. Receipt of his City salary during these times was contingent on being eligible each time under the Terms of the EMBP.

Although the Reimbursement Agreement signed on October 15, 2010 combined the totals owing for each time period, Pl.'s Statement of Undisputed Fact Ex. J, at 6, ECF No. 25-4, the total balance due depended on the Debtor's eligibility for payment in each time period. Without the Debtor being eligible for payment in each of the three Periods of Coverage, the total owing would be different, and the amount deducted from his paychecks would be different. The three

transactions arise out of three separate sets of facts used to determine the Debtor's eligibility for City pay.  For the foregoing reasons, the Court denies Plaintiff's claim for equitable recoupment.

**<u>Whether the debt is dischargeable?</u>**

In chapter 13, "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title" unless an exception applies.  11 U.S.C § 1328(a).  Section 1328(a) excepts from discharge

> any debt—
> (1) provided for under section 1322(b)(5);
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
> (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

The debt owed to the City does not fall under any of the statutory exceptions to discharge in a chapter 13 bankruptcy and is dischargeable.  The Plaintiff has abandoned its claims for nondischargeability under § 523 and its argument for nondischargeability based on equitable recoupment was rejected by this Court pursuant to the above reasoning and as further detailed below.

"The term 'debt' means liability on a claim."  11 U.S.C. § 101(12).  "[T]he term 'debt' is sufficiently broad to cover any possible obligation to make payment, whether that obligation is liquidated or unliquidated, fixed or contingent, disputed or undisputed, and whether or not it is embodied in a judgment."  *Mazzeo v. United States* (*In re Mazzeo*), 131 F.3d 295, 302 (2d Cir. 1997).

> The term "claim" means—
> (A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)  right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A)-(B).  "Congress intended . . . to adopt the broadest available definition of 'claim.'"  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  "[A] 'right to payment' is nothing more nor less than an enforceable obligation . . . ."  *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

"Recoupment indeed is an equitable remedy that, of itself, gives no right to actual payment[,]" where "the party claiming recoupment has some underlying right to recover, directly or indirectly, against the party from whom recoupment is sought, an alleged right to recoupment unquestionably is a 'claim' within the meaning of the Code."  *Kings Terrace Nursing Home & Health Related Facility v. N.Y. State Dep't of Soc. Servs.* (*In re Kings Terrace Nursing Home & Health Related Facility*), 184 B.R. 200, 202–03 (Bankr. S.D.N.Y. 1995).  In *Kings Terrace*, the New York State Department of Social Services ("DSS") sought to recoup alleged Medicaid overpayments made to the Debtor before he filed for bankruptcy.  *Id.* at 202.  The court found that DSS could seek recovery of the overpayments pursuant to DSS regulations and in contract.  *Id.* at 203.  The right to recoupment rested on a "claim" barred by confirmation of the plan and discharge of the debt.  *Id.*

The Debtor and the City have an agreement and the Debtor's breach of the agreement permits the City to seek recovery of the monies in contract.  Pl.'s Statement of Undisputed Fact Ex. C, at 2, ECF No. 25-2 ("I further agree that this agreement shall in no way limit the right of the City to exercise any other lawful remedy available to it to recover any amount not repaid by me as expeditiously as possible.").  The City has an underlying right to recover the advanced salary

through non-bankruptcy law, so the balance remaining on the advanced funds, totaling $49,856.79, is a claim dischargeable under § 1328.

The Plaintiff relies on *In re Villarie* in which the Second Circuit held that a pension loan was not dischargeable. 648 F.2d 810 (2d Cir. 1981). The *Villarie* Court held that the amount borrowed from a NYCERS annuity fund would be offset against the debtor's future benefits when he retired or resigned from employment by the City. The borrowed amount did not constitute a claim and the New York City Administrative Code did not give NYCERS the right to sue the debtor for the advance. *Id.* at 812. "It thus had no 'right to payment'" where "it can never do more than offset the loan against future benefits." *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991) (citing *In re Villarie*, 648 F.2d at 812.).

This case differs from *Villarie*. The advanced salary is not advanced from an existing fund into which the Debtor paid nor is it advanced from a pension fund. By the City's own admission, the monies were paid to the Debtor from the City's own funds and not from the Debtor's funds set aside for some future benefit. Pl.'s Mem. of Law 6, ECF No. 26. The City *can* do more than "offset the loan against future benefits." The Debtor and the City contracted for repayment giving the City a right to sue on contract claims for the amount of the advance.

Contract claims can be discharged in bankruptcy. *Goldman, Sachs & Co. v. Esso Virgin Is., Inc., (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d Cir. 2000) ("A claim arises for purposes of bankruptcy when 'the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy law.'" (quoting *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 496 (2d Cir. 1995))); *Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*, 209 F.3d 125, 128–29 (2d Cir. 2000) (holding that where a contract gives a right to payment that arose before the filing of the petition, it is a

claim dischargeable in bankruptcy); *In re Chateaugay Corp.*, 53 F.3d at 497 ("A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts."); *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 52 (Bankr. S.D.N.Y. 1998) ("[S]ection 523(a)(6) does not encompass a breach of contract claim unless the same act constitutes an intentional tort such as conversion.").

The Plaintiff also relies on *Mullen v. United States* in which the debtor was paid a $15,000 readjustment allowance by the U.S. Air Force upon release from duty. 696 F.2d 470, 471 (6th Cir. 1983). When the debtor subsequently returned to the Air Force and then retired, he was not entitled to retirement pay until he repaid seventy-five percent of the readjustment allowance. When he filed for bankruptcy, the debtor claimed the Air Force had a claim against him and the Air Force claimed they "merely [had] a right to recoup prepaid retirement benefits." *Id.* at 472. The court found that the debt was not a claim. The transaction between the Air Force and the debtor was like a loan on an insurance policy. The readjustment allowance was "nothing more than a type of prepaid retirement benefit" and the Air Force did not have a "right to recoup the readjustment allowance from any other source." *Id.*

The monies paid by the City to the Debtor are not a like a "prepaid retirement benefit": the monies had to be repaid through paycheck deductions or monthly payments whether the employee continued to work or retire after release from military duty. Pl.'s Statement of Undisputed Facts Ex. B, at 10, ECF No. 25-1. In *Mullen*, the Air Force could only recover the monies after the debtor returned to the Air Force and wanted to take advantage of retirement pay. In this case, the City can recover the monies through other means, namely, contract claims.

The Plaintiff also argues that the debt should not be dischargeable based on public policy grounds similar to the nondischargeability of student loans. To support this contention, they rely

on *In re Davis* in which Judge Lifland stated that the public policy behind preventing discharge of

student loans was to "avoid abuse by students who may attempt to discharge such loans upon

graduation, and to prevent harm to the governmental and non-profit entities that provide

educational loans to students." *Davis v. Fin. Comm. of Cardinal Spellman High Sch.* (*In re Davis*),

316 B.R. 610, 613 (Bankr. S.D.N.Y. 2004).   Student loans are protected from discharge in

bankruptcy under 11 U.S.C. 523(a)(8).   There is no similar protection for wage advances in the

Code.   Given that there is a lengthy history of Congress explicitly attempting to protect student

loan providers through Code provisions, *see Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222

F.3d 82, 87–88 (2d Cir. 2000), this Court does not find that Congress intended to do the same for

public or private employers who provide wage advances to their employees.   This Court finds

unpersuasive all other cases Plaintiff cited to oppose dischargeability.[5]

---

[5] *Fischbach v. Ctrs for Medicare & Medicaid Servs. (In re Fischbach)*, 2013 U.S. Dist. Lexis 39855, at *14–*15
(D.S.C. 2013) (finding that recoupment of Medicare overpayments is not dischargeable); *Aetna Life Ins. Co. v. Bram
(In re Bram)*, 179 B.R. 824, 827 (E.D. Tex. 1995) (holding that recoupment does not give a right to actual payment
so recoupment is not a claim dischargeable under the Bankruptcy code); *Brown v. Gen. Motors Corp.*, 152 B.R. 935,
938 (W.D. Wis. 1993) (finding that a right to recoupment is unaffected by discharge); *Mercy Hosp. of Watertown v.
N.Y. State Dept.*, 171 B.R. 490, 495 (N.D.N.Y. 1994) (finding that a right to recoupment gives no right to payment, is
not a claim, and is not dischargeable); *In re Hiler*, 99 B.R. 238, 243–45 (D.N.J. 1989) (finding that monies subject to
recoupment are not property of the estate and cannot be discharged); *Pa. State Emps.' Ret. Sys. v. Thomas (In re
Thomas)*, 529 B.R. 628, 636 (Bankr. W.D. Pa. 2015) (finding recoupment of overpayments of retirement benefits does
not an act to collect a "debt" or "claim" subject to discharge); *In re Delicruz*, 300 B.R. 669, 683–84 (Bankr. E.D. Mich
2003) (finding that the bankruptcy plan gives the creditor a right to recoupment against future disability benefits which
does not give rise to payment and is not a claim or debt subject to discharge); *In re Esquivel*, 239 B.R. 146, 151–52
(Bankr. E.D. Mich. 1999) (finding that pre-petition loans from retirement accounts are not secured or unsecured claims
or debts under the Bankruptcy Code); *Aetna Life & Casualty Co. v. LaPierre (In re LaPierre)*, 180 B.R. 95, 101–02
(Bankr. D.S.C. 1994) (finding the monies subject to recoupment are not part of the bankruptcy estate and are not
dischargeable); *In re Maine*, 32 B.R. 452, 454–55 (Bankr. W.D.N.Y. 1983) (finding that a right to recoupment survives
discharge).

**Whether the Plaintiff violated the automatic stay by continuing to deduct wages from the
Debtor's paycheck and whether the Debtor is entitled to actual and punitive damages?**

"[A]n individual injured by any willful violation of a stay provided by this section shall
recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances,
may recover punitive damages." 11 U.S.C. § 362(k)(1). "A creditor willfully violates [§] 362
when it knows of the filing of the petition (and hence of the automatic stay) and has the general
intent simply to perform the act found to violate [§] 362; no specific intent to violate [§] 362 is
necessary." *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 83 (2d Cir. 2013). "[A]ny deliberate
act taken in violation of a stay, which the violator knows to be in existence, justifies an award of
actual damages." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990).

"[U]nless obtained confidentially, knowledge acquired by an agent acting within the scope
of his [or her] agency is imputed to his [or her] principal and the latter is bound by such
knowledge." *In re Crawford*, 388 B.R. 506, 519 (Bankr. S.D.N.Y. 2008) (quoting *Bauer v.
CS-Graces, LLC*, 48 A.D.3d 922, 924 (3d Dep't 2008)) (internal quotation marks omitted).
"Agency is a legal relationship between a principal and an agent. It is a fiduciary relationship
which results from the manifestation of consent of one person to allow another to act on his or her
behalf and subject to his or her control, and consent by the other so to act." *Id.* (quoting *Maurillo
v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993)).

The Debtors listed the DCAS as a creditor and notice of the petition was sent only to the
DCAS. The DCAS, NYPD, and Office of Payroll Administration ("OPA") are separate agencies
with no evidence of a consent-control relationship between them. DCAS is not an agent of either
the NYPD or OPA. When the NYPD became aware of the bankruptcy filing, wage deductions
ceased. The Plaintiff did not willfully violate the stay when, without having sufficient notice of
the Debtors' bankruptcy, they continued post-petition paycheck deductions.

"Upon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to the status quo position as of the time of the filing of the petition." *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998); *see In re Weber*, 719 F.3d at 80–81 (agreeing with the majority rule that creditors must immediately return assets seized after a bankruptcy filing).  In *Sucre*, the creditor continued to garnish the debtor's wages after the debtor filed the bankruptcy petition.  The court found that the creditor must return the wages garnished after the debtor filed for bankruptcy and awarded the debtor attorney's fees and damages.  *Sucre*, 226 B.R. at 348–49.

That the Plaintiff ceased post-petition wage deductions when the NYPD became aware of the bankruptcy filing is not enough to avoid violating the automatic stay.  The Plaintiff willfully violated the stay when it failed to return those post-petition wage deductions to the Debtors.  The Court grants the Debtors actual damages of $1,540.21, the amount of the post-petition wage deductions.[6]  Plaintiff shall send these funds to Debtors' counsel within three business days of the entry of this decision.  The Court will also grant Debtors' reasonable attorney's fees and expenses in an amount to be determined pending the submission of an affidavit by counsel.  Debtors' counsel shall submit this affidavit within fourteen days of the entry of this decision and shall detail only the time spent specifically related to Plaintiff's violation of the stay and not for the defense of this adversary proceeding as a whole.

"An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages . . . ."  *In re Crysen/Montenay Energy Co.*, 902 F.2d at 1105.  The Court does not find the Plaintiff acted with malice or in bad faith.  The Plaintiff's only violation was the erroneous position that it was entitled to hold on to the post-

---

[6] Def.'s Mem. of Law 6, ECF No. 30.

petition wage deductions pending further ruling from this Court.  A more persuasive fact pattern for an act of malice or bad faith would have been where the Plaintiff opted to continue with the wage deductions even after having proper notice of the Debtors' bankruptcy petition.  That is not what happened here, and the Debtors are not entitled punitive damages.

**<u>Whether the Debtors' are entitled to attorney's fees under 11 U.S.C. § 523(d)?</u>**

Notwithstanding the attorney's fees that Debtors were granted related to the Plaintiff's violation of the stay, the Debtors' motion did not address its second counterclaim for attorney's fees under § 523(d) for having to defend this adversary proceeding.  The Debtors failed to or chose not to seek summary judgment on this claim.

The Plaintiff notes in its reply brief that it withdrew its third cause of action alleging that the debt is nondischargable under 11 U.S.C. § 523(a)(2), (a)(4), (a)(7) and (a)(19).  It presumes that this is the reason the Debtors did not address their counterclaim for attorney's fees under § 523(d).  Pl.'s Reply 13–21, ECF No. 32.  A cause of action under § 523(d) is exclusive to a creditor's claim under § 523(a)(2) and prescribes attorney's fees where "the position of the creditor was not substantially justified . . . ."  The Court agrees that after the Plaintiff withdrew its claim under § 523(a)(2), the Debtors claim under § 523(d) was effectively moot.

## <u>CONCLUSION</u>

The Plaintiff's motion for summary judgment is denied.  As to the Plaintiff's First and Fourth Causes of Action, the Court finds that the debt is not subject to equitable recoupment, the monies are property of the Debtors' estates, and denies the Plaintiff's requests for relief from the automatic stay, declaratory relief, and a permanent injunction against inclusion of non-estate funds. The Plaintiff abandoned its Second and Third Causes of Action.  As to the Plaintiff's Fifth Cause of Action, the Court finds the debt does not fall under any provision of § 1328 and is dischargeable.

The Debtors' motion for summary judgment is granted in part and denied in part. As to the Debtors' First Counterclaim, the Court finds the Plaintiff willfully violated the automatic stay. The Debtors are entitled to actual damages in the amount of $1,540.21 to be paid within three business days from the entry of this decision. The Debtors are also entitled to reasonable attorney's fees in an amount to be determined pending an affidavit by Debtors' counsel to be submitted within fourteen days from the entry of this decision. The Debtors are not entitled to punitive damages. The Debtors' Second Counterclaim is denied as moot because the Plaintiff withdrew its Third Cause of Action. The Debtors' request for dismissal of the adversary proceeding is granted pending the determination of attorney's fees.

**/s/ Cecelia G. Morris**

_____

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

**Dated: August 2, 2019**
**    Poughkeepsie, New York**

